# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 16-222-2 |
| | ) | |
| JUAN WILQUIN HERNANDEZ-BOURDIER | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

CONTI, Chief District Judge

## I. Introduction

On October 14, 2016, the government filed a request for detention of defendant Juan Wilquin Hernandez-Bourdier ("defendant"). (ECF No. 10.) After the magistrate judge denied that request and entered an order of pretrial release, the government appealed that decision. This court conducted a de novo review and considered the submissions, arguments of counsel, and evidence presented, as well as the transcript of the hearing held before the magistrate judge, the pleadings in this case, and the pretrial services report prepared by the United States Probation and Pretrial Services Office. The court held a hearing which occurred on two separate days during which the parties made arguments and entered testimony and exhibits into evidence. The court denied the government's motion because defendant met his burden to overcome the presumption arising under 18 U.S.C. § 3142(e) and the government failed to show by clear and convincing evidence that defendant is a danger to the community or to show by a preponderance of the evidence that defendant is a flight risk. The court affirmed the orders of the magistrate judge and ordered that defendant be released on bond with conditions of supervision pending trial, but stayed the order for two weeks for the government to determine whether to appeal this court's order. The government appealed the order and upon the

request of the government, the court extended the stay of its order pending that appeal. This opinion sets forth the reasons for the court's decision, which were detailed on the record.

## II.    Background

### A.    Procedural History

On October 11, 2016, a grand jury returned a two-count indictment against defendant and his co-defendant[1] at criminal action number 16-222. Defendant was named in both counts of the indictment charging him with conspiracy to possess with intent to distribute 1 kilogram or more of heroin on or about January 26, 2016, a violation of 21 U.S.C. § 846 (count one), and possession with intent to distribute 1 kilogram or more of heroin on or about January 26, 2016, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i) (count two). (ECF No. 1.) The offenses at counts one and two of the indictment each carry a statutory minimum term of imprisonment of not less than ten years if the conviction is the defendant's first felony drug conviction that is final. 21 U.S.C. § 841(b)(1)(A)(i). The pretrial services report reflects defendant has no criminal history. (Pretrial Services Report at 4.)

On November 2, 2016, a detention hearing was held before a magistrate judge. (ECF No. 35.) At the detention hearing before the magistrate judge on November 2, 2016, the government entered two exhibits into evidence. (H.T. 11/2/16 (ECF No. 44) at 7.) The magistrate judge determined that defendant presented evidence sufficient to overcome the rebuttable presumption and the government had not met its burden to show by clear and convincing evidence that defendant posed a danger to the community or by a preponderance of the evidence that he was a risk of flight. The magistrate judge entered orders denying the government's request for detention (ECF No. 36), setting a bond as to defendant (ECF No. 37), and setting conditions of release for defendant pending trial (ECF No. 38). The orders were stayed pending appeal to this court. (ECF No. 41.)

---

[1]    Habys Omar Meran is named along with defendant in the indictment. (ECF No. 1.)

On November 3, 2016, the government filed an appeal of the magistrate judge's decision. (ECF No. 39.) On November 9, 2016, the undersigned judge held a de novo hearing with respect to defendant's detention status. At the hearing held before the undersigned judge on November 9, 2016, the government presented testimony from David Coleman, a computer forensics and media examiner, and Brianna Tetrault, a special agent with Homeland Security Investigations. (H.T. 11/9/16 at 17-41.) Defendant's counsel at the hearing requested additional time to brief an issue raised by the court concerning the implications of a detainer filed by the U.S. Immigration and Customs Enforcement ("ICE"). (H.T. 11/9/16 at 59.) The court granted the request to continue the hearing and permitted the parties to file supplemental briefing. (Id. at 60.) On December 7, 2016, both parties filed supplemental briefs. (ECF Nos. 50, 51.) On December 8, 2016, the detention hearing was concluded. At the continued detention hearing held on December 8, 2016, the government entered fifteen exhibits into evidence. (H.T. 12/8/16 at 8-9.) At the same hearing, defendant presented the testimony of Zinnia Duran, defendant's cousin's fiancée. (Id. at 10-31.)

After reviewing the transcript of the November 2, 2016 detention hearing, and taking into consideration the briefing, evidence and arguments presented by the parties at the hearing held on November 9, 2016, and December 8, 2016, the court affirmed the magistrate judge's decision to deny the government's request for the detention of defendant, to enter a bond as to defendant and to set conditions of his release. The court ordered defendant be released on bond subject to the conditions of supervision, including the appointment of a third-party custodian, home detention and GPS monitoring, set by the magistrate judge, with the additional condition that defendant would need prior approval of the probation office to leave his home for employment.

###### B.     Factual Background

Based upon the record, including the pretrial services report, the following factual background was developed.

### 1. The offenses charged against defendant in the indictment

The indictment arose from a traffic stop by a Pennsylvania State Trooper in Mercer County, Pennsylvania. On January 26, 2016, co-defendant Habys Omar Meran was driving a 2002 Honda minivan travelling eastbound with defendant in the passenger seat. (H.T. 11/2/2016 (ECF No. 44) at 6, ECF No. 42 at 2-3.) Pennsylvania State Trooper Reed Grenci observed the vehicle's windows to be illegally tinted and began to follow the vehicle. (ECF No. 42 at 3.) Trooper Grenci stopped the vehicle after he observed the vehicle switching lanes without using the turn signal. (Id. at 3.) Trooper Grenci obtained consent from the driver to search the vehicle. (H.T. 11/2/2016 (ECF No. 44) at 7.) Because the trooper was aware that this kind of vehicle is known to contain hidden compartments in the rear bumper, the trooper slid under the vehicle and immediately observed an aftermarket hidden trap in the rear bumper. (H.T. 11/2/2016 (ECF No. 44) at 6-7, ECF No. 42 at 3.) The sophisticated trap was electronically operated and utilized hydraulic actuators to open and close the compartment. (ECF No. 42 at 3.) Trooper Grenci found four separate packages located inside the trap. (H.T. 11/2/2016 (ECF No. 44) at 7.)

Those four packages contained in excess of four kilograms of heroin, which would be sufficient to make 250,000 stamp bags of heroin with a street value in excess of $2.5 million. (H.T. 11/2/2016 (ECF No. 44) at 7.) The heroin was wrapped in plastic wrap and covered in coffee grounds. (Id., ECF No. 42 at 3.) The fingerprints of the driver were located on the packages. (Id.) There was also a backpack in the vehicle containing a roll of plastic wrap and coffee grounds. (H.T. 11/2/2016 (ECF No. 44) at 7.) Defendant acknowledged that the backpack belonged to him. (Id.) Trooper Grenci arrested defendant and the driver and they were detained by a Mercer County state judge until the time of their federal indictment. (ECF No. 42 at 3.) Defendant's cellular phone was seized and contained conversations on WhatsApp about drugs, as well as pictures of firearms, stacks of money, and people shot dead. (H.T. 12/8/16 at 48.) Numerous family members attended

defendant's hearings, and submitted letters on his behalf, most of which were typed and signed by one person who, upon cross-examination, admitted that she typed and signed those letters. She claimed she did so at the direction of the individuals whose names appeared on the letters. (ECF No. 43 Ex. B, H.T. 12/8/16 at 18-21.)

### C. Defendant's Personal Background

#### 1. Personal Characteristics

Defendant was 34 years old as of December 8, 2016, i.e., the date of the continued detention hearing before the undersigned judge. (Pretrial Services Report at 4.) According to the pretrial services report prepared by the United States Probation and Pretrial Services Office, defendant is in good physical health, is not under the care of a medical doctor, and is not prescribed any medication. (Id. at 3.) Defendant reported his current mental health status as poor due to the instant federal case; however, defendant does not have a history of mental health issues. (Id.) Defendant has a high school diploma. (Id. at 1.)

Defendant is a citizen of the Dominican Republic and has a valid passport from that country. (Pretrial Services Report at 2.) Defendant surrendered his passport to a Pretrial Services Officer during the hearing held before the magistrate judge on November 2, 2016. (H.T. 11/2/16 (ECF No. 44) at 44.) Defendant reported that he moved to the United States, specifically, Bronx, New York, in January 2014 and has lived there for the past two years. (Pretrial Services Report at 2.) The residence is reportedly rented by defendant and his wife, and there is not currently a landline telephone installed in that residence. (Id.) Defendant reported no international travel since arriving in the United States. (Id.) According to ICE, defendant was granted a B2 class tourist visa on January 29, 2014, which expired on July 29, 2014. (Id.) On July 22, 2015, defendant filed an application with the Department of Homeland Security to register permanent residence or adjust status. (Id., ECF No. 43 Ex. A.) An initial interview was scheduled for February 10, 2016, but defendant was in custody on

that date and unable to attend. (Pretrial Services Report at 2.) ICE considers defendant to be in the country illegally, and as a result a detainer was lodged against defendant on October 26, 2016. (Id.)

### 2. Familial Associations

According to defendant, his parents passed away when he was a child and he was primarily raised in the Dominican Republic by his cousin who was his legal guardian. (Pretrial Services Report at 2.) Defendant was married to a woman in the Dominican Republic from an unspecified date until 2014, at which time the couple divorced. (Id., ECF No. 43-10 at 2-3.) Three children were reportedly born to that union, and defendant said he has a fourth child from a previous relationship. (Pretrial Services Report at 2.) All of defendant's children live in the Dominican Republic and he maintains daily contact with them. (Id.) Defendant and his current wife were married on August 4, 2014, in Bronx, New York and reportedly have no children. (Id., ECF No. 43 Ex. B.) Although his wife was not present during his court proceedings, she submitted an affidavit dated December 7, 2016, affirming that they are married, she loves him and wants him to return. (H.T. 12/8/16 at 4-5.) Defendant's brother and two sisters, one of whom is his co-defendant's wife, live in Bronx, New York, and he is regularly in contact with them. (Pretrial Services Report at 2.)

Defendant's aunt is willing to serve as third-party custodian and permit him to live with her while he is released on bond. (Pretrial Services Report at 2.) Defendant's aunt lives in Bronx, New York. (Id.) There is a landline telephone installed at her residence to accommodate electronic monitoring if that condition is imposed upon defendant. (Id.)

### 3. Work History and Employment Prospects

Defendant has been employed for two years in construction. (Pretrial Services Report at 3.) Defendant reported that he worked "under the table" for an unknown construction company and earned approximately $100 per day. (Id. at 3.) According to a letter written by defendant's brother,

defendant is employed by his brother as a "handy man". (Id.) Defendant cited no assets, and noted that his only liability is an outstanding medical expense of $3,000. (Id.)

### 4. Criminal History

Defendant has no prior arrest history. (Pretrial Services Report at 4.) Defendant reported his current mental health status as poor due to the instant federal case; however, defendant reported no history of mental health diagnoses, counseling, or medication. (Id. at 3.) Defendant reported substance abuse of cannabinoids once two years ago and cocaine on weekends when he was aged 20-21. (Id. at 4.)

## III.   Standard of Review

The court's standard of review of a magistrate judge's decision about pretrial detention is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).

## IV.   Discussion

The structured system of the Bail Reform Act (the "Bail Reform Act"), 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. The court is charged with holding a hearing to determine whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If the court determines no sufficient condition or combination of conditions exists, the court may order that a defendant be detained without bail pending trial.

### A.   Rebuttable Presumption

In this case, there is an applicable rebuttable presumption that no conditions or combinations of conditions will reasonably assure the appearance of defendant as required or the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . *(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)* [or] (B) an offense under section 924(c), 956(a), or 2332b of this title[.]

18 U.S.C. § 3142(e)(3) (emphasis added).

There is probable cause to believe defendant committed an offense that falls within the category of offenses listed in § 3142(e)(3)(A) because a grand jury returned a two-count indictment charging defendant with conspiracy to possess with intent to distribute 1 kilogram or more of heroin on or about January 26, 2016, a violation of 21 U.SC. § 846 (count one), and possession with intent to distribute 1 kilogram or more of heroin on or about January 26, 2016, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i) (count two). The maximum statutory penalty for each offense is ten years if it is defendant's first felony drug conviction that is final, twenty years if it is defendant's second felony drug conviction that is final, or a mandatory term of imprisonment of life if it is defendant's third or subsequent felony drug conviction that is final. 21 U.S.C. § 841(b)(1)(A)(i). Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). Defendant at the hearings before the magistrate judge and this court did not contest the application of the rebuttable presumption to this case.

**B.     The § 3142(g) factors**

In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g), which the court must consider in determining whether pretrial detention is warranted.

United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)). The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### C.     Rebutting the Presumption

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community or the appearance of the defendant as required if the defendant is released pending trial. A defendant must produce only "some evidence" to rebut the presumption set forth in § 3142(e). See United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). The quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. at 383. When a defendant produces conflicting evidence, the presumption does not disappear. The

rebutted presumption retains evidentiary weight. See United States v. Carbone, 793 F.2d 559, 560-61 (3d Cir. 1986) (per curiam); see also United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

Here defendant argued that the presumption was rebutted by his history and characteristics. He had employment, no reported history of violence or criminal history and strong family ties to the United States. He also surrendered his passport. If the presumption is rebutted, the government must prove by clear and convincing evidence that defendant is a danger to the community or by a preponderance of the evidence that he is a risk of flight.

**D.      Danger to the Community**

Safety of the community is implicated not only by violence, but also by narcotics trafficking. In cases involving drug offenses, the danger to the community is the likelihood that the defendant will, if released, traffic in illicit drugs. United States v. Perry, 788 F.2d 100, 111 (3d Cir. 1986). The combination of drugs and guns constitutes a very serious danger to the community. United States v. Pitts, Crim. No. 09-204, 2010 WL 3303800, at *4-5 (W.D. Pa. Aug. 19, 2010) ("Several district courts have found that the combination of guns and drugs constitutes a danger to the community.") (citing United States v. Levy, Crim. No. 08-393, 2008 WL 4978298, at *2 (E.D. Pa. Nov. 20, 2008); United Sates v. Miller, Crim. No. 10-4058, 2010 WL 3035753, at *4 (N.D. Iowa Aug. 3, 2010); United States v. Francis, Crim. No. 01-60, 2001 WL 899635, at *5 (S.D. Ind. June 8, 2001)).

**1.  The nature and circumstances of the offenses charged**

The offenses for which defendant is charged are very serious drug offenses involving a large amount of heroin and carry with them significant statutory mandatory minimum terms of imprisonment dependent on defendant's criminal history. The distribution of heroin has devastating effects on a community. Defendant in this case did not present evidence with respect to the first factor listed in § 3142, i.e., the nature and circumstances of the offenses charged. This factor does not

support the rebuttal of the presumption and weighs in favor of defendant being detained pending trial.

### 2. The weight of the evidence against defendant

With respect to the second factor, i.e., the weight of the evidence against defendant, defendant relied on the lack of evidence linking defendant to drug trafficking. Defendant argued that he was a passenger in the vehicle with no physical control over the vehicle. (H.T. 11/9/16 at 11.) There is evidence, which was presented to the magistrate judge by the government and reviewed by this court, including:

− the acknowledgement by defendant that the backpack, which contained coffee grounds and packaging materials similar to that in which the heroin was found, belonged to him;

− a video of the vehicle pulled over by Trooper Grenci, showing the sophisticated trap in the back; and

− a series of WhatsApp chats found on defendant's cellular phone.

At the hearing before the undersigned judge, the government entered into evidence photographs found on defendant's cellular phone, including:

− two self-portrait photographs and other attribution information, used to prove it was defendant's cellular phone;

− a photo of a hand holding a firearm;

− a photo of a revolver and fifty rounds of ammunition; and

− a photo of defendant's passport.

The government also entered into evidence documents implicating that certain letters submitted in support of defendant were authored by one person, including:

− six letters from family members; and

− immigration signatures from three family members.

The government presented testimony from two special agents. Special Agent David Coleman, a computer forensics and media examiner, testified that, based on user-generated metadata, defendant was the owner of the cellular phone containing photographs of firearms, ammunition, currency, kilo-shaped objects, dead people, a personal commuter plane and co-defendant's vehicle, and that the cellular phone contained text conversations about drugs via WhatsApp. (H.T. 11/9/16 at 17-28.) The photographs of the currency, kilo-shaped objects, dead people, and a personal commuter plane found on defendant's cellular phone were saved on his cellular phone, but were not taken by the phone. (Id. at 26-27.) Special Agent Brianna Tetrault, who works in Homeland Security Investigations, testified that it was unusual that family members misspelled defendant's middle name in the letters of support submitted by defendant, many of these letters contained an unusual address for the courthouse, and the handwriting style of the signatures on many of the letters was very similar. (Id. at 33-39.)

At the hearing held on December 8, 2016, before the undersigned judge, defendant's cousin's fiancée, Zinnia Duran ("Ms. Duran"), testified about several letters, including a letter signed by her, that appear to be authored by the same person. When asked about the misspelling of defendant's middle name, Wilquin, Ms. Duran testified that in her letter she spelled defendant's middle name with a "K" instead of a "Q," because in English "Wilquin" phonetically sounds like "Wilkin". (H.T. 12/8/16 at 14.). Ms. Duran testified that many of the family members had gathered together to submit letters in support of defendant. (Id. at 18.) Under cross-examination, Ms. Duran admitted that family members asked her to type and translate their handwritten letters because they did not speak English. (Id.) Ms. Duran admitted that the family members also asked her to sign their names on the letters. (Id. at 30.) The court found that after robust cross-examination, Ms. Duran finally was truthful and told the court she typed the letters in issue and signed them. The court gave the letters from family members little weight because of her testimony.

The government pointed to evidence that defendant was in a vehicle that had a sophisticated hidden trap containing heroin worth $2.5 million, the backpack in the vehicle belonged to defendant, and defendant has a gun as evidenced by the photograph on his cellular phone. The government argued that defendant is in the United States illegally and would be deported if released. (H.T. 11/9/16 at 43-45.)

The evidence relied upon by the government is not convincing with respect to future danger to the community. The evidence shows that defendant was in a car that contained a large amount of heroin, he had a backpack with packaging materials similar to those in which the heroin was contained, and defendant's cellular phone contained photos of firearms and possibly text conversations about drugs. The reasonable inferences that can be discerned from the evidence are that defendant was a mule and perhaps someone who helped in the packaging of the heroin. The pictures taken from the cellular phone are insufficient to conclude or reasonably infer that the defendant possessed a gun. The government wanted the court to infer that defendant was holding the gun. However, the picture showed only part of a hand holding the gun and that hand had a skin tone darker than defendant's skin. There is evidence of defendant's involvement in the transportation and packaging of the drugs in the vehicle. That evidence does not itself support the rebuttal of the presumption, but combined with his lack of criminal history and other characteristics, weighs in favor of a finding that the presumption was rebutted. The evidence, however, is not clear and convincing proof of a future danger to the community because the court would be unable from that evidence to predict defendant is prone to violence or to engage in drug trafficking if released. (See discussion infra part D, 4.)

### 3. The history and characteristics of defendant

With respect to defendant's personal characteristics, defendant presented evidence that he has strong family ties to the United States and family ties to his wife, with whom he resided. Defendant

submitted nine letters from family and friends testifying to his good character, six of which the government refuted as being signed by the relevant person. (ECF Nos. 43-1–43-9.) Twenty-two family members traveled from New Jersey, New York, and Tennessee to attend his hearings. (H.T. 11/9/16 at 12.) Defendant entered the United States on a tourist visa, which expired on July 29, 2014. (Pretrial Services Report at 2.) Defendant has resided in the United States for two and a half years and has applied for long-term permanent residency status. (Id., ECF Nos. 43-10–43-13.) ICE considers defendant to be in the country illegally and lodged a detainer against him on October 26, 2016. (Pretrial Services Report at 2.) Defendant's aunt in New York agreed to serve as third-party custodian for him. (H.T. 11/9/16 at 14.)

Defendant has employment history and sufficient financial resources to meet his monthly financial obligations. (Pretrial Services Report at 3.) According to the pretrial services report, defendant worked "under the table" for a construction company, and according to a letter written by defendant's brother, his brother employs him as a handyman. Id. Defendant has no history of drug or substance abuse, other than what he admitted to when he was in his early twenties and his one-time used of cannabinoids two years ago. He has no criminal history. Therefore, there is no record of his nonappearance at court proceedings. Defendant did not appear for his ICE hearing, but that was because he was in detention for this case. Defendant was in the United States illegally for a year after his B2 class tourist visa expired, which implies that he does not abide by certain United States laws. (Id. at 2.) On July 22, 2015, defendant tried to rectify his illegal status by applying for permanent residency status. (Id., ECF No. 43, Ex. A.) While other courts have indicated the ICE detainer is not relevant in detention proceedings, United States v. Barrera-Omana, 638 F.Supp.2d 1108 (D. Minn. 2009), the issuance of an ICE detainer is part of defendant's history. There was no evidence that defendant had any incidents of violence in his past. The evidence of defendant's familial ties, work

history, and lack of criminal history supports the court's conclusion that the presumption of danger to the community was rebutted and favors his release pending trial.

### 4. The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release

With respect to the fourth factor, the danger posed to the community if defendant was released, defendant argued that he was only a passenger in the vehicle where the drugs were found and there was no direct connection between defendant and any nefarious activity. (H.T. 11/9/16 at 12.) The government did not present evidence that defendant has engaged in violent conduct, only that the indictment charged him with serious drug offenses, he was riding in the car that contained a large quantity of heroin, he possessed a backpack containing materials similar to those found with the heroin, and he had pictures of guns and text conversations about drugs on his cellular phone. This evidence shows that defendant was a mule and a participant in the packaging of dangerous drugs. The presumption is rebutted because combined with the evidence of his personal history and characteristics, the evidence of being a mule or packaging the drugs would be sufficient for the court to conclude there are pretrial conditions which would prevent defendant from engaging in future drug trafficking while on pretrial release. The government's evidence is not clear and convincing for this factor to weigh in favor of detention.

The court must consider the nature and seriousness of the danger to any person or the community that would be posed by defendant's release. In other words, in cases like this where there is no evidence of violence, the court must *predict* whether defendant is likely to engage in drug trafficking if released pending trial. Perry, 788 F.2d at 114 ("[T]he dangerousness determination involves a prediction of the detainee's likely future behavior[,]" i.e., a prediction about "the likelihood that the defendant will, if released, commit one of the proscribed federal offenses."). "Such a prediction explores not the external world of past events but the inner territory of the detainee's intentions." (Id. at 114.) The court, however, can only look to the record before it.

The government argued that defendant had heroin worth $2.5 million and possession of a gun. (H.T. 12/8/16 at 47.) Drug dealing does not happen in isolation, and the quantity of drugs and the sophisticated trap were part of a larger organization. (Id. at 48.) Defendant's cellular phone containing text conversations about carrying drugs on a commuter plane, photos of firearms, stacks of money, and people shot dead, implicates defendant's interest in drugs and firearms. (Id.) Defendant argued that there was no DNA or fingerprint connecting him to any drugs or the backpack in the vehicle. (H.T. 11/9/16 at 13.) Because there is evidence that defendant acknowledged the backpack belongs to him, the presence of the items in the backpack may demonstrate that he helped to package the drugs. That evidence would not alone implicate that he would continue to traffic drugs. There were no firearms, cash, or drug ledgers found in the vehicle. (Id.) He has no criminal history. In the video presented by the government, defendant appeared to obey all instructions given to him by police. (Id.)

The sheer amount of drugs that were present in the car is not alone sufficient to meet the clear and convincing evidence standard that permits this court to predict defendant would engage in future drug trafficking, as there is no evidence that defendant had prior incidents of drug trafficking or a lavish lifestyle inconsistent with the income of his wife and his income. There is insufficient context regarding the picture of the gun on defendant's cellular phone to ascertain whether defendant is the person holding the gun. There was no evidence that defendant engaged in violent acts in the past. Under those circumstances, this court cannot predict that it is likely defendant would be a danger to the community, i.e., engage in violent acts or drug trafficking if released. This factor weighs in favor of the presumption being rebutted and his release. Releasing defendant into his aunt's custody on home detention, with GPS monitoring and the other strict conditions imposed by the magistrate judge, should ensure the safety of the community. The third-party custodian should report any violations of the conditions of supervised release she knows about and the GPS monitoring will

enable the probation officer to monitor his movements, which should help ensure he is not acting as a mule, i.e., transporting drugs for others. In other words, there are conditions that will ensure the safety of the community if defendant is released pending trial.

**5. Conclusion**

Defendant presented sufficient evidence to rebut the presumption of detention for safety of the community in this case. The evidence of defendant's history and characteristics, namely his employment history, no prior history of violent acts or criminal history, and his connections to his wife and other family members, as well as the evidence supporting his role as a mule and in packaging the drugs, but not as an actual seller of the drugs, was sufficient to rebut the presumption and weighs in favor of release in this case. This court finds, after considering the record as a whole and even giving weight to the rebuttable presumption, that the government did not show by clear and convincing evidence there is no condition or set of conditions which would reasonably assure that defendant is not a danger to the community, i.e., defendant would likely engage in violent acts or drug trafficking while on release.

**E.    Risk of Flight**

The government argued that defendant is a very significant risk of flight because all his children live in the Dominican Republic and he lived almost all his life there. (H.T. 12/8/16 at 49.) The government argued that defendant's current marriage is a sham. Defendant divorced his wife that he lived with for a long period of time and just days later married a woman ten years younger who has never appeared at his detention hearings. (Id.) The government's arguments about the "sham" nature of the marriage appear to be speculation. His wife submitted an affidavit averring to her love and desire for him to return. A divorce and quick remarriage and the wife's failure to travel from Bronx, New York, to Pittsburgh, Pennsylvania, to attend the detention hearing are insufficient for this court to conclude the marriage is a sham.

The court raised the concern that defendant may be deported due to the ICE detainer lodged against him. Other courts have held that an immigration detainer on a defendant is not a relevant factor in deciding whether a defendant is a risk of flight. See United States v. Barrera-Omana, 638 F.Supp.2d 1108, 1110 (D. Minn. 2009) (an ICE detainer is an external factor not listed under 18 U.S.C. § 3142(g) and not under defendant's control; therefore, a court cannot consider a detainer when determining whether there are conditions of release that will reasonably assure the appearance of defendant). The fact that defendant has an immigration detainer is not positive proof that he will be taken into ICE custody or that he will be deported. See United States v. Xulam, 84 F.3d 441, 442 n.1 (D.C. Cir.1996) ("The fact that a detainer has been lodged does not mean appellant necessarily will be taken into custody by the INS if released by this Court."). It is speculative to consider a standardized ICE detainer form and the possibility of immigration proceedings as evidence of defendant's future nonappearance. See United States v. Villanueva-Martinez, 707 F.Supp.2d 855, 857-858 (N.D. Iowa 2010) ("If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions." (citing United States v. Montoya-Vasquez, Crim. Action No. 08-3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009)).

Defendant argued and the government agreed that it was very unlikely defendant would be deported due to his ICE detainer (H.T. 12/8/16 at 36.) If defendant is released, the parties agreed he will either be detained in ICE custody until trial, or he will be on pretrial release subject to the conditions set by the court. (H.T. 12/8/16 at 46.) The evidence adduced by defendant, i.e., the surrender of his passport, his strong family ties in the United States, his wife's income and his income, and no prior criminal history, rebuts the presumption in this case that he is a risk of flight, and the government did not prove by a preponderance of the evidence—even considering the

evidentiary weight of the presumption and the factors previously discussed—that defendant is a risk of flight.

Defendant surrendered his passport to the probation office. There was no showing that defendant had any plans to the leave the country and the court was advised that defendant will not likely be deported before trial. "The purpose of a Section 3142(e) risk of flight determination...is to secure the appearance of the accused at trial." United States v. Himler, 797 F.2d 156, 161-62 (3d Cir.1986) (citing United States v. Maull, 773 F.2d 1479 (8th Cir. 1989) (risk of flight shown by prior attempt to leave the country in order to flee prosecution); United States v. Vortis, 785 F.2d 327 (D.C.Cir.1986) (risk of flight shown by possession of fraudulent passports and a planned trip to Liberia).

On December 19, 2016, the government filed a notice of correction of the record. (ECF No. 56.) The government asserted that although it advised the court defendant could be detained by ICE if released, several decisions show that once an order of release is entered in a criminal case, ICE is unable to take custody of the defendant. The government cited for that proposition two decisions: United States v. Blas, Crim. Action No. 13-178, 2013 WL 5317228, at *1 (S.D. Ala. Sept. 20, 2013), and United States v. Trujillo-Alvarez, 900 F.Supp.2d 1167, 1174 (D. Or. 2012) (Id.) Trujillo-Alvarez and Blas were both illegal re-entry cases involving conflicting orders from the district court and ICE regarding defendant's release.

In Trujillo-Alvarez, the court recognized that under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., ICE has the authority to remove and deport an individual "who has no lawful right to be in the United States…" Trujillo-Alvarez, 900 F.Supp.2d at 1169. If that same individual is charged with a federal offense, the Bail Reform Act must be followed in the criminal case. It is the Executive Branch that determines whether to proceed with the criminal case. If it does so then any order of pretrial release must be followed. Because the defendant had been detained by

ICE after the order of pretrial release was entered and became final, the court afforded the Executive Branch one week to determine whether to proceed with the criminal case involving the charge of illegal reentry or to proceed with the defendant's removal and deportation. If the Executive Branch chose to proceed with the criminal case, the defendant must be released as ordered; otherwise, the criminal charge would be dismissed with prejudice.

In Trujillo-Alvarez, the court explained that an ICE detainer serves to notify another agency that ICE is seeking custody to arrest and remove an alien who is in the custody of that agency. Trujillo-Alvarez, 900 F.Supp.2d at 1175. The court noted, however, that, "[u]nder the existing INA regulations no alien shall depart from the United States while that alien is a defendant in a criminal case pending in a court in the United States. In this fashion, the Executive Branch by regulation has made the determination that a criminal proceeding takes priority over removal and deportation." Id. at 1179 (footnote omitted).

In Blas, like in Trujillo-Alvarez, the defendant was charged with illegal reentry and released subject to conditions of supervision. The defendant was taken into custody by reason of an ICE detainer. The court in Blas followed the rationale set forth in Trujillo-Alvarez and concluded that when a criminal case is commenced in federal court and federal jurisdiction is invoked, the federal court "has priority or first standing and administrative deportation proceedings must take a backseat to court proceedings until the criminal prosecution comes to an end." Blas, 2013 WL 5317228, at *3. Thus, the ICE detainer could not be used to avoid the Bail Reform Act's provisions. Id. at *5 (citing United States v. Trujillo-Alvarez, 900 F.Supp.2d at 1176). The court in Blas clarified that its order of pretrial release took precedence over the ICE detainer. The court concluded that once the Executive Branch determines to proceed with the criminal case, that is a policy decision and "the Court's decision regarding the government's motion for detention will control and in the event the defendant

is released on conditions the sole avenue available for attacking that release order will be by appeal. Id. at *8.

In Trujillo-Alvarez and Blas the district courts noted that government agencies must decide among themselves before a detention hearing under the Bail Reform Act whether the criminal prosecution or the ICE detainer will take priority. Once a criminal case is commenced, "persons who are not citizens must be treated under the [Bail Reform Act] like all other persons charged with an offense." Trujillo-Alvarez, 900 F.Supp.2d at 1174. Those decisions support the conclusion that the ICE detainer should not affect this court's analysis with respect to risk of flight, but also show that if the order of release becomes final, defendant would have to be released on the bond set subject to the conditions of release imposed and could not be detained by ICE. If ICE detained defendant, it would violate this court's order of release. Id. at 1179.

Although once the presumption is rebutted the government only needs to prove defendant is a risk of flight by a preponderance of the evidence, Himler, 797 F.2d at 161, the court concludes, after considering the record as a whole and the § 3142(g) factors, that the presumption of a risk of flight was rebutted and the government did not establish that risk by a preponderance of the evidence.

## II. Conclusion

Defendant met his burden to set forth some evidence under the § 3142(e) factors to rebut the presumption of detention in this case with respect to the danger he poses to the community and the risk of flight. The government did not show by clear and convincing evidence that defendant poses a risk of danger to the community, i.e., he is likely to engage in violent acts or drug trafficking if released prior to trial. The government did not show that it is more likely than not that defendant will flee if released pending trial. Here, after considering all the § 3142(g) factors the court concluded the risk of danger to the community and the risk of flight can be mitigated by imposing strict conditions

of release, including surrendering his passport (which he has done), home detention, appointment of a third-party custodian, and GPS monitoring.

For the reasons set forth in this opinion and on the record, the orders of the magistrate judge (ECF No. 36) denying the request of the government for detention of defendant Juan Wilquin Hernandez-Bourdier (ECF No. 10), entering bond (ECF No. 37), and setting conditions of release (ECF No. 38), were affirmed with the additional condition of release that defendant's ability to leave his home for employment will require the prior approval of the probation office. Defendant was ordered to be released on the bond subject to the stringent conditions of release. (ECF No. 52.) The order of release was stayed pending the government's appeal. (ECF Nos. 53, 57, 59.)


BY THE COURT,

Dated: January 5, 2017                    /s/ JOY FLOWERS CONTI
                                          Joy Flowers Conti
                                          Chief United States District Judge